## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ALLA ALI BIN ALI AHMED**, *et al.*, | ) | |
| | ) | |
| | ) | |
| *Petitioners*, | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **OPPOSITION TO** |
| | ) | **MOTION TO STAY** |
| | ) | **PRODUCTION OF** |
| | ) | **FACTUAL RETURNS** |
| | ) | |
| **GEORGE W. BUSH**, *et al.*, | ) | **Civil Action No.;** |
| | ) | **05-CV-1678 (GK)** |
| *Respondents*. | ) | |

### Opposition To "Respondents' Motion To
### Stay Production of Factual Return"

### INTRODUCTION

On November 10, 2005, respondents moved to stay this action. Respondents sought, among other requests, an indefinite stay to produce factual returns regarding petitioner Alla Ali Bin Ali Ahmed ("petitioner").[1] In requesting this relief, respondents cited to administrative burdens allegedly associated with preparing the factual returns. On December 7, 2005, this Court granted most of the relief sought by respondents, and extended respondents' obligation to produce factual returns until March 7, 2006.[2]

Respondents now seek the same relief, albeit on different grounds. Previously, respondents sought a stay of the production of factual returns on the grounds of a potentially-related appeal. This time, respondents seek the identical relief on the grounds of the possible

---

[1] Docket Entry No. 13.

[2] Order of December 7, 2005, Docket Entry No. 18.

application of Pub. L. No. 109-148, tit. X, 119 Stat. 2680 (2005), also known as the Detainee

Treatment Act of 2005 ("the DTA").

Respondents' request should be denied for several reasons.  **First**, the applicability of the

DTA is not before this Court.  The potential application of the DTA is before the D.C. Circuit

Court (oral argument is scheduled for March 22nd).  There is no reason to disturb the status quo

until there is an applicable appellate determination.  **Second**, in the unlikely event that the DTA

precludes this action, respondents would still be obliged to provide factual returns so that

petitioner could complete the Administrative Review Board submissions that respondents have

recently demanded (on a relatively-short deadline).  **Third**, in the unlikely event that the D.C.

Circuit Court decides that the DTA applies retroactively and to this action, respondents will still

be obligated to produce factual returns to the D.C. Circuit Court in accordance with the DTA for

review of determinations of the Combatant Status Review Tribunal (the "CSRT").  The factual

returns are necessary in order for the petitioner and petitioner's counsel to have notice of the

allegations against petitioner and a fair opportunity to rebut those allegations, either before this

Court or the D.C. Circuit Court.  **Fourth**, respondents have continually represented -- in both

Court submissions and correspondence between counsel -- that any stays would not interfere

with client visits (which are presently being scheduled).  Production of factual returns will ensure

that the information in possession of the Department of Justice corresponds with information in

possession of petitioner (which will be provided to petitioner's counsel during client visits).

**Fifth**, respondents concede that the administrative burdens --  the grounds for respondents'

previous request to stay the production of factual returns -- have diminished.  And **sixth**, in light

of two recently published case studies revealing evidence of conceded and gross errors on

respondents' part regarding improper detentions, the production of factual returns will ensure

that such errors are not repeated as regards petitioner.

For these reasons, respondents' request for an indefinite stay of the production of factual returns should be denied.

## ARGUMENT

**The DTA Is Not Before This Court
And Its Unlikely Application Is Not
Relevant To Whether Factual
Returns Should Be Produced**

The issue of potential application of the DTA is not before this Court. The matter is currently before the D.C. Circuit Court, and petitioner's counsel believes that oral argument on the potential retroactive application of the DTA is scheduled for March 22nd. Because the application of the DTA is not an issue pending in this matter, it is not grounds for an additional stay for the production of factual returns.[3]

---

[3] Respondents cite to the "new, statutory withdrawal of the Court's jurisdiction" (Respondents' Mem. ¶4). This statement is misleading. The DTA was modified to specifically allow pending actions to go forward. The DTA's "effective date" section was changed to remove the phrase "The amendment made by paragraph (1) shall apply to any application or other action that is pending on or after the date of the enactment of this Act", which appeared in the earlier version (S. Amend. 2516). The DTA's inapplicability to pending cases, such as this action, was made clear throughout the passage of the DTA. One example is Senator Lieberman's statement to Congress made on December 21, just prior to the final vote in the passage of the Act containing the DTA:

> A critical feature of this amendment is that it is forward looking. A law purporting to require a Federal Court to give up its jurisdiction over a case that is submitted and awaiting decision would raise grave constitutional questions. The amendment's jurisdiction-stripping provisions clearly do not apply to pending cases, including the *Hamdan v. Rumsfeld* case, which is currently pending before the Supreme Court. In accordance with our traditions, this amendment does not apply retroactively to revoke the jurisdiction of the courts to consider pending claims invoking the Great Writ of Habeas Corpus challenging past enemy combatant determinations reached without the safeguards this amendment requires for future determinations. The amendment alters the original language introduced by Senator Graham so that those pending cases are not affected by this provision.

S. Cong. Rec. 14-252 (Dec. 21, 2005).

In addition, respondents assert that it is respondents' "understanding that it is the sense of the Court that it wishes to await anticipated guidance from the D.C. Circuit regarding the effect of [the DTA] before proceeding further in Guantanamo detainee habeas cases" (Respondents' Mem. ¶3). This statement is not accurate. This Court has stated it will continue to oversee many aspects of this case while other issues are resolved by the appellate courts. These aspects include, but are not limited to, the maintenance and enforcement of its order of preservation[4], the filings of motions for emergency relief[5], enforcement of pending protective orders[6], enforcement of this Court's order to provide 30-days advance notice of transfer of petitioner[7], and other relief.

**Respondents Will Need To Produce Factual**
**Returns -- Regardless Of Any Appellate Decision --**
**Because Factual Returns Are Necessary To Complete**
**The ARB Submissions Recently Demanded By Respondents**

On February 2, 2006, the Office for the Administrative Review of the Detention of Enemy Combatants (an office under respondents' control) notified petitioner's counsel of an upcoming deadline of February 24, 2006 in order to provide "input regarding [petitioner] for review and consideration by the 2006 Administrative Review Boards" (email of Terri McPalmer, CDR, JAGC, U.S. Navy, dated February 2, 2006. This email and the attached Administrative Review Board ("ARB") instructions are annexed as exhibit A, collectively). Since respondents

---

[4]  Order of November 16, 2005, Docket Entry No. 14.

[5]  Order of December 7, 2005, Docket Entry No. 18.

[6]  Id.

[7]  Id.

have not provided any information related to petitioner's detention, the factual returns are the

only materials upon which petitioner can rely to challenge his enemy combatant status.[8]

      In brief, respondents cannot mandate that submissions dependant on factual returns be

filed by a date certain, and then simultaneously seek an indefinite stay of the obligation to

produce those factual returns.

**In The Unlikely Event That The DTA Is Found**
**To Have Retroactive Application And Apply**
**To This Action, Respondents Will Need To Produce**
**The Same Factual Returns To The D.C. Circuit Court**

      If, as argued by respondents (*see* Respondents' Mem. ¶4), the DTA is ultimately

determined to vest exclusive jurisdiction in the D.C. Circuit Court, respondents will still need to

provide factual returns to the D.C. Circuit Court in accordance with the DTA for review of

CSRT determinations.  Therefore, there is no reason to allow an additional delay on respondents'

obligation to provide the most basic information (none being provided to date) regarding the

grounds for petitioner's detention.

      Whether this action goes forward before this Court or before the D.C. Circuit Court, the

factual returns are necessary in order for the petitioner and petitioner's counsel to have notice of

the allegations against petitioner and a fair opportunity to rebut those allegations.

**Respondents Have Continually Represented**
**That Stays Would Not Interfere With Client Visits.**
**The Production Of Factual Returns Will Help Ensure**
**That The Information In Possession Of Respondents'**
**Counsel Corresponds With Information**
**In Possession Of Petitioner**

      Throughout this litigation, respondents have repeated that any stays issued would not

affect the capacity of petitioner's counsel to visit petitioner (Respondents' Motion To Stay

---

[8]   Presumably, the Office for the Administrative Review of the Detention of Enemy Combatants
will grant a short extension on this deadline so that petitioner's counsel may obtain the factual
returns to provide the information required by that office.

Proceedings Pending Related Appeals at 3, 12 ("In seeking a stay, however, respondents do not intend thereby to block counsel access to properly represented prisoners. To that end, respondents do not object to the entry of the protective order previously entered in other Guantanamo detainee cases, along with appropriate supplementary orders, to permit such access….", "Although respondents do not object to entry of the protective order and related, supplementary orders previously entered in other Guantanamo detainee cases to enable counsel to meet and correspond with properly represented petitioners…."[9]; email of respondents' counsel of November 8, 2005 ("Finally, once the protective order is entered, a stay would not interfere with cleared counsel's access to properly represented detainees, consistent with the terms of the protective order") (exhibit B)). Upcoming client visits are currently being coordinated.

Presumably, petitioner will have some materials that explain why he has been held for approximately four years. The factual returns will allow petitioner's counsel, and, if needed, the Court, to compare the information produced in the factual returns with that provided by petitioner himself.

The client visits will provide the Court and parties with insight as to why petitioner believes he is being detained. But the factual returns will provide the only information available to date regarding why respondents believe petitioner needs to be detained.

**Respondents Concede That The Administrative Burdens -- The Grounds Of Respondents' Previous Request To Stay Production -- Have Diminished**

Respondents' previous request to indefinitely stay production of factual returns (denied by this Court) was based on allegedly-exhaustive self-imposed administrative burdens (Respondents' Motion To Stay Proceedings Pending Related Appeals at 13 - 14).[10] Respondents

---

[9]    Docket Entry No. 13.

[10]    Docket Entry No. 13.

now assert that two other Judges have entered orders denying all pending motions (Respondents'
Mem. ¶5).  Therefore, respondents concede that the administrative burdens -- that previously
made production of factual returns difficult -- have diminished.

Furthermore, this Court's order -- that respondents provide factual returns on or before
March 7, 2006 -- was issued on December 7, 2005.  Presumably, at least two-thirds of the efforts
respondents referred to in the earlier motion to stay should be complete, as the factual returns are
due in less than one month.[11]

**Two Recently-Published Case Studies
Highlight The Need For Immediate
Production Of Factual Returns**

On February 3, 2006, the National Journal, a non-partisan publication[12], published a
cover story containing three segments that resulted from an exhaustive analysis of detainee case
files (Corine Hegland, *Detained and Dangerous?*, National Journal, Feb. 3, 2006).  The article is
attached (exhibit D).[13]  In addition, this past week, a study of Department of Defense data related
to 517 detainees was released by Seton Hall University of Law (Mark Denbeaux, *et al.*, Report
On Guantanamo Detainees, A Profile of 517 Detainees through Analysis of Department of

---

[11]   Order of December 7, 2005, Docket Entry No. 18.  Furthermore, I extended an offer of a
courtesy extension of two weeks, in case the administrative burdens were as heavy as
respondents stated.  This offer was rejected (email correspondence of February 3, 2006) (Exhibit
C).

[12]   According to www.nationaljournal.com/about, the Washington D.C. based "…National
Journal Group Inc. is committed to providing publications and services that are nonpartisan,
reliable and of the highest quality."

[13]   *See also In re Guantanamo Detainee Cases*, 355 F. Supp. 2d. 443, 468 - 78 (D.D.C. 2005,
Green, *J.*) (referencing clear and indisputable errors of respondents in conducting the CSRTs,
resulting in the apparently unwarranted and severe "consequences of the detainee's 'enemy
combatant' status [that were] so terribly serious…").

Defense Data, Seton Hall University of Law, February 2006).[14]  These studies are highly disconcerting, and highlight the need for the production of factual returns in this case.

According to a statement given to an attorney working with the Center for Constitutional Rights, petitioner Alla Ali Bin Ali Ahmed was 20 years old when he went to Pakistan to study Islamic law.  This was the first time he left Yemen.  He was arrested in Pakistan inside a house with other students of the Qu'ran.  Petitioner Alla Ali Bin Ali Ahmed was not involved in any actions of hostility against the United States (and, moreover, was fearful that his arrest could somehow endanger his family in Yemen).  His family has not heard from him in three years.

Denying respondents' request for an indefinite stay of production of factual returns might assist respondents from making errors similar to those identified by the National Journal (if similar errors were made regarding petitioner Alla Ali Bin Ali Ahmed).  Denying this motion could likewise protect petitioner from future deprivation of liberty (if respondents decide that detention is no longer warranted).  Similarly, mandating production of factual returns would protect respondents if -- as respondents have implied -- no errors were made regarding petitioner.

---

[14]  This extensive study reveals very disturbing facts regarding Guantanamo detentions, including, but not nearly limited to, the discovery that 55% of detainees are not determined to have committed any hostile acts against the United States or its coalition allies, only 5% were captured by the United States forces and 86% were arrested by either Northern Alliance or Pakistani forces, and that many detainees deemed not to be enemy combatants (but are still being held at the base) are accused of more serious allegations than are many still deemed to be enemy combatants.  This is highly relevant to the issue of production of factual returns -- for respondents have not yet even stated whether petitioner Ali Allah Bin Ali Ahmed has been deemed an enemy combatant.

## CONCLUSION

For the reasons mentioned above, respondents' motion should be denied.

Dated:  February 10, 2006                    Respectfully submitted,

*Of Counsel*:                                _____/s/_____

                                             Ian Wallach (IW8631)
Gitanjali S. Gutierrez (GG1234)                Admitted *pro hac vice*
  *Admitted pro hac vice*                    21 Quarterdeck Street, Suite A
Barbara Olshansky (NY #0057)                 Marina del Rey, CA  90292
  *Admitted pro hac vice*                    Tel.: (310) 822-1587
Center For Constitutional Rights             Fax.: (310) 823-3458
666 Broadway, 7th Floor
New York, New York 10012                     *Counsel for Petitioners*
Tel: (212) 614-6439
Fax: (212) 614-6499