IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALLA ALI BIN ALI AHMED, *et al.*, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 05-CV-1678 (GK) |
| ) | |
| GEORGE W. BUSH, *et al.*, ) | |
| ) | |
| Respondents. ) | |

**RESPONDENTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**PRELIMINARY STATEMENT**

As explained in Respondents' Motion to Dismiss, the law of this circuit, announced recently in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. denied*, 127 S. Ct. 1478 (Apr. 2, 2007), requires dismissal of this case. *See* Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, § 7, 120 Stat. 2600. Petitioner opposes Respondents' motion to dismiss, variously contending that the Court of Appeals' decision in *Boumediene* is not truly final, that "abeying" this action is more appropriate than dismissing it, or that for other reasons the direction that the Court of Appeals provided in *Boumediene* to dismiss this case should not be followed. Petitioner's proposed course of action is untenable and without basis in law.[1]

**ARGUMENT**

**I.      THE LAW OF THE CIRCUIT REQUIRES DISMISSAL OF THIS CASE**

The decision of the Court of Appeals for the District of Columbia Circuit in *Boumediene*

---

[1] In footnote one of petitioner's opposition memorandum, petitioner's counsel provides an explanation for the lateness of the filing. Respondents acknowledge that it is a matter for the Court's discretion whether to accept petitioner's opposition. *See* Local Civil Rule 7(b).

requires dismissal of this habeas case. *See Boumediene*, 476 F.3d at 986, 994. The decision in

*Boumediene* is final and is the law of the circuit. *See Ayuda, Inc. v. Thornburgh*, 919 F.2d 153,

154 (D.C. Cir. 1990) (Henderson, J., concurring) ("[o]nce [an] opinion [is] released it [becomes]

the law of this circuit"). Indeed, the Court of Appeals has recognized as much by dismissing for

lack of jurisdiction other detainees' habeas cases, pursuant to *Boumediene*. *See Kiyemba v.*

*Bush*, Nos. 05-5487, et al. (D.C. Cir. Order of Mar. 22, 2007) (attached as Exhibit D to Resps'

Mot. to Dismiss); *Paracha v. Bush*, Nos. 05-5194, et al. (D.C. Cir. Order of Apr. 9, 2007)

(attached as Exhibit E to Resps' Mot. to Dismiss); *Zalita v. Bush*, No. 07-5129 (D.C. Cir. Order

of Apr. 25, 2007). And the Supreme Court's refusal to review *Boumediene* underscores the fact

that that decision is final and binding. *See* 127 S. Ct. 1478; *see also Boumediene v. Bush*, ___

S.Ct. ___, 2007 WL 1225368 (2007) (denying petitioners' motion for extension of time in which

to file a petition for rehearing of the order denying certiorari and denying petitioners' motion for

suspension of the order denying certiorari); *Hamdan v. Gates*, No. 06-1169, ___ S. Ct. ___ (Apr.

30, 2007) (denying cert.). Petitioner, therefore, has no legal grounds on which to postpone

dismissal of his habeas case. *See Ayuda, Inc. v. Thornburgh*, 919 F.2d 153, 154 (D.C. Cir. 1990)

(Henderson, J., concurring) ("[o]nce [an] opinion [is] released it [becomes] the law of this

circuit.").[2]

     Petitioner tries to evade the application of *Boumediene* by relying on a wholesale

---

[2] Judge Henderson's statement was an express statement of the reasoning inherent in the majority opinion, which held that because the Court of Appeals had issued a prior opinion deciding that the district court lacked jurisdiction, a later order of the district court should be stayed based on that earlier Court of Appeal opinion, even though (as here) the mandate had not yet issued from that earlier opinion. Thus, *Ayuda* – and not just Judge Henderson's concurrence – stands for the proposition that a decision of the Court of Appeals is binding in the Circuit regardless of whether the mandate has issued.

misreading of *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998). Petitioner

argues that *Steel Co.* somehow means that the presence of an arguably nonfrivolous claim on the

merits prevents dismissal of a case on jurisdictional grounds regardless of Circuit precedent.

Such a reading is simply untenable. Indeed, *Steel Co.* strongly supports dismissal of this case,

because it requires Courts to decide jurisdictional issues *before* merits questions, and requires a

court that lacks jurisdiction to dismiss a case forthwith. If Petitioner's reading of *Steel Co.* were

correct, the myriad jurisdictional statutes found in the United States Code and the voluminous

caselaw on the subject would be meaningless; all that a plaintiff or petitioner would need to do to

have a federal court exercise jurisdiction over his or her case would be to state a claim that is not

frivolous on its merits.

The unanimous Court in *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999),

explained *Steel Co.* in the following terms:

> In *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998), this Court adhered to
> the rule that a federal court may not hypothesize subject-matter jurisdiction for the
> purpose of deciding the merits. *Steel Co* rejected a doctrine, once approved by several
> Courts of Appeals, that allowed federal tribunals to pretermit jurisdictional objections
> "where (1) the merits question is more readily resolved, and (2) the prevailing party on
> the merits would be the same as the prevailing party were jurisdiction denied." Id., at 93,
> . Recalling "a long and venerable line of our cases," *id.*, at 94, *Steel Co.* reiterated: "The
> requirement that jurisdiction be established as a threshold matter ... is 'inflexible and
> without exception,'" *id.*, at 94-95 (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S.
> 379, 382 (1884)); for "[ j]urisdiction is power to declare the law," and "'[w]ithout
> jurisdiction the court cannot proceed at all in any cause,'" 523 U.S., at 94 (quoting *Ex
> parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)).

526 U.S. at 577. Under that long-standing rule, this Court simply lacks the authority to do

anything other than to consider its jurisdiction, and then, in accordance with binding circuit

precedent, to dismiss this case.

## II.     THE EXISTENCE OF DTA REMEDIES DOES NOT UNDERMINE THE CONTROLLING NATURE OF *BOUMEDIENE*

Petitioner contends that *Boumediene* does not control any habeas case in which the petitioner is pursuing a DTA petition in the Court of Appeals. That argument is wholly without merit. The Court of Appeals held in *Boumediene* that Section 7 of the MCA eliminates federal court jurisdiction over habeas petitions filed by the detainees at Guantanamo Bay. *See* 476 F.3d at 986, 994; *see also Boumediene*, 476 F. 3d at 992 (holding that an alien "without property or presence in this country has no constitutional rights, under the due process clause or otherwise"), and referred to dismissal of the habeas cases and vacatur of the district court opinions "as the only recourse." 476 F.3d at 994. The proposition that *Boumediene* does not control the cases in which petitioners are exhausting their remedies under the DTA is pure fiction. In denying certiorari, the Supreme Court declined to review the Court of Appeals decision in *Boumediene*, including that Court's conclusion that Section 7 of the MCA requires dismissal of the detainees' habeas cases.[3] Thus, petitioner has no right to pursue his habeas case, even after he has pursued his remedies under the DTA.

Nor can this Court find a basis in *Rhines v. Weber*, 544 U.S. 269 (2005), to conclude it has discretion to stay this case pending exhaustion of DTA remedies. Filing a DTA petition is not merely an exhaustion requirement for the habeas case, but is the only jurisdictionally proper action that can presently be pursued by petitioner. In contrast, in *Rhines*, the habeas petitioner

---

[3] Moreover, given that the Supreme Court declined to review the *Boumediene* decision, the statement of Justices Kennedy and Stevens accompanying the denial of certiorari cannot plausibly be read, as some petitioners suggest, to mean that they would interpret dismissal of the underlying habeas actions as an "additional step[]" that "prejudice[s] the position of the petitioners." 127 S. Ct. 1478.

would have been able to pursue his habeas action in federal court, after exhaustion of remedies

in state court, so long as the federal statute of limitations had not run. 544 U.S. at 272-73. The

Court held that, in those circumstances, no statute barred the district court from staying

petitioner's federal habeas action so that it could be pursued post-exhaustion. *See Rhines*, 544

U.S. at 276 (noting that federal courts' authority to enter stays in habeas-related matters is

constrained by applicable statutes).

      Here, pursuant to statute, the court lacks jurisdiction over this habeas case. Accordingly,

there is no reason to maintain the case pending exhaustion of DTA remedies. As the Court of

Appeals has acknowledged, dismissal of the habeas cases is the "only recourse." *Boumediene*,

476 F.3d at 994. Thus, there is nothing for the district court to do, except dismiss the case. *See*

*Paracha v. Bush*, No. 05-5194, et al. (D.C. Cir. Order of Apr. 9, 2007) (attached as Exhibit E to

Resps' Mot. to Dismiss) (remanding to the district court with instruction to dismiss the habeas

petitions for lack of jurisdiction).

**III.    THE COURT SHOULD REJECT PETITIONER'S REQUEST THAT THIS CASE BE MAINTAINED FOR THE PURPOSE OF THE COURT CONTINUING TO EXERCISE JURISDICTION REGARDING COUNSEL ACCESS AND ADVANCE NOTICE OF TRANSFER**

      Petitioner also wants the Court to maintain the habeas case on the theory that this would

allow the Court to continue to exercise jurisdiction regarding counsel access and other matters.

Petitioner contends that this Court has authority to preserve those orders to protect the status

quo, pending a determination as to the Court's jurisdiction over the habeas petition. Petitioner is

not correct either as to the nature of the Court's authority in this regard or as to whether his

theory would justify denial of Respondents' Motion to Dismiss.

      As has been explained, the Court of Appeals has already determined that federal courts

lack jurisdiction over petitioner's habeas case, *see* 476 F.3d at 986, 994, and the Supreme Court has declined to review that ruling, *see* 127 S. Ct. 1478. Accordingly, this Court cannot adopt the convoluted logic under which it would have the authority to exercise jurisdiction for the purpose of entering or maintaining its orders. Neither *United States v. United Mine Workers*, 330 U.S. 258 (1947), on which petitioner relies, nor any other authority supports such logic. *See United Mine Workers*, 330 U.S. at 291 ("*Until its judgment declining jurisdiction* should be announced, [the court of appeals] had authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition[.]") (emphasis added).

Petitioner cannot effectively claim that his habeas action must be maintained until this Court has answered all the questions about DTA proceedings and the scope of its review in order to preserve potential remedies before this Court and on appeal. Even if questions remained as to the scope of proceedings under the DTA, that would provide no basis to maintain the habeas case so the Court could exercise jurisdiction that it lacks. The Court of Appeals, in proceeding with the DTA cases, will answer those questions as necessary. If petitioner obtains adverse rulings in his DTA case, the remedy will be to seek review in the Supreme Court, not to resurrect the district court habeas case.

In particular, petitioner asks that the protective order remain in place to ensure counsel access.[4] To the extent that an issue such as counsel access or any other appropriate matter is to

---

[4] The fact that certain elements of the Protective Order will survive dismissal of these cases does not support petitioners' position in this regard. Portions of the Protective Order detail how classified and protected information will be handled after termination of the case. The obligations accepted by petitioner's counsel by signing the Protective Order survive under the terms of that Order, regardless of why the case is ultimately dismissed. The vitality of those portions of the Protective Order has no bearing on whether this Court retains jurisdiction in light of the *Boumediene* decision.

be addressed, it must be addressed in the Court of Appeals in the context of properly filed DTA petitions for review of CSRT determinations.  The Court of Appeals must establish its own procedures, based on any procedural rights that Congress provided to detainees in the DTA and appropriate to the nature of the Court of Appeals' review under the DTA.  *Cf. Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("By lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power."); *id.* at 75, 78-79 (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals).  Indeed, issues relating to the scope and terms of an appropriate protective order and counsel access regime already are being addressed in the Court of Appeals in two pending DTA petition cases, *Bismullah v. Gates*, No. 06-1197 (D.C. Cir), and *Parhat v. Gates*, No. 06-1397 (D.C. Cir), with oral argument having been held on May 15, 2007.[5]  In any event, petitioner and his counsel may maintain continued access by filing a DTA petition and agreeing to an interim counsel access regime without prejudice to whatever right petitioners have  to seek a different regime in the Court of Appeals. *See* Mot. to Dismiss at 10-11.

Further, it is neither necessary nor appropriate that the Court maintain this case in order to preserve or maintain the order that prohibits respondents from transferring petitioner from

---

[5] In light of the Court of Appeals' upcoming consideration of various preliminary issues in the DTA litigation, continuation of the district court counsel access regime is not only unnecessary, but such action has the potential to create significant problems of concurrent and conflicting obligations on the parties.  In the interests of clarity and comity, the Court should not maintain the district court counsel access regime indefinitely during the pendency of DTA litigation.  Instead, the Court should allow the Court of Appeals to establish its own procedures based on any procedural rights that Congress provided to detainees in the DTA.

Guantanamo Bay to another country without thirty days' advance notice to the Court and counsel. As respondents have demonstrated in numerous filings in this Court, in any transfer of a Guantanamo detainee, a key concern is whether the receiving government will treat the detainee humanely and in a manner consistent with its international obligations; specifically, it is the policy of the United States not to repatriate or transfer a detainee to a country where the United States believes it is more likely than not that the individual will be tortured. *See, e.g., Al Darbi v. Bush*, Civ. No. 05-2371 (RCL) Resps' Mem. in Opp. to Pets' Mot. for Prelim. Inj. Requiring Advance Notice of Any Transfer or Removal at 7-9 (dkt. no. 26) (filing including description of policy of not transferring person to a country when the United States believes it would be more likely than not the person would be tortured).

In addition, as has been explained, the District Court is without jurisdiction in this matter and, specifically, with respect to issues relating to detainee transfers. As recognized in *Boumediene*, Section 7 of the MCA eliminates jurisdiction not only over habeas actions, but also over all cases "'which relate to any aspect of the detention, transfer, treatment, trial, or conditions of detention of an alien detained by the United States since September 11, 2001.'" *See* 476 F.3d at 986-87. Thus, the MCA expressly bars claims relating to any transfer of a petitioner. Indeed, the Court of Appeals recently dismissed for want of jurisdiction Guantanamo detainee cases involving advance notice of transfer orders, *see* Judgment filed Mar. 22, 2007 in *Kiyemba v. Bush*, Nos. 05-5487, *et al.* (D.C. Cir.) (attached as Exhibit D to Resps' Mot. to Dismiss), as well as a case in which a detainee sought to enjoin his proposed transfer from Guantanamo Bay, *see Zalita v. Bush*, No. 07-5129 (D.C. Cir. Order of Apr. 25, 2007); S. Ct.

Order of May 1, 2007 (denying motion for injunctive relief)).[6]

The next step this Court must take in this case is to enter an order of dismissal in accordance with *Boumediene* and *Steel Co.* Once the case is dismissed, the access and notice regimes that petitioner would like to see remain in effect will have come to end of their lives, for the simple reason that the counsel access and advance notice requirements set by the Court are entirely interlocutory and therefore will not survive an order of dismissal. *See Chaparro-Febus v. International Longshoremen Ass'n, Local 1575*, 983 F.2d 325, 331 n. 5 (1st Cir.1992) (citing *Pacific Tel. & Tel. Co. v. Kuykendall*, 265 U.S. 196 (1924); *Shaffer v. Carter*, 252 U.S. 37 (1920)) (interlocutory orders "cannot survive a final order of dismissal"); *Cypress Barn, Inc. v. Western Elec. Co.*, 812 F.2d 1363, 1364 (11th Cir.1987) (same).

Although petitioner cites some cases for the proposition that an order can be modified and enforced after the dismissal of the case in which it was entered, that authority provides no support for their position. Those cases involved protection of the confidentiality of information disclosed during the course of the case. *See, e.g.*, *Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004) (involving confidentiality of documents). This set of cases on which petitioner relies help respondents, if anyone. They demonstrate that in a case in which confidential material has been exchanged from one party to another pursuant to a protective order, the court retains authority to protect that confidentiality upon dismissal of the underlying case. That conclusion is certainly correct in a situation such as this, where the parties have agreed to continued post-dismissal confidentiality. *See* Amended Protective Order and Procedures for Counsel Access to Detainees as the United States Naval Base in Guantanamo Bay, Cuba, ¶ 41

---

[6] Copies of these orders are attached as Exhibit G.

(providing that protected information may not be divulged by petitioners' counsel after termination of proceedings). That authority, however, has nothing to do with orders governing the manner in which the parties interact during the course of litigation which must end because Congress and the Court of Appeals have both made clear that this Court may do nothing other than to enter an order of dismissal.[7]

**CONCLUSION**

For the foregoing reasons, Respondents respectfully request that the Court dismiss petitioner's habeas cases for lack of jurisdiction.

Dated: June 18, 2007                    Respectfully submitted,

                                        PETER D. KEISLER
                                        Assistant Attorney General

                                        DOUGLAS N. LETTER
                                        Terrorism Litigation Counsel


                                          /s/ *Andrew I. Warden*
                                        JOSEPH H. HUNT (D.C. Bar No. 431134)
                                        VINCENT M. GARVEY (D.C. Bar No. 127191)
                                        JUDRY L. SUBAR (D.C. Bar 347518)
                                        TERRY M. HENRY
                                        JEAN LIN
                                        JAMES J. SCHWARTZ (D.C. Bar No. 468625)
                                        ROBERT J. KATERBERG
                                        ANDREW I. WARDEN (IN Bar 23840-49)
                                        NICHOLAS A. OLDHAM
                                        JAMES C. LUH
                                        Attorneys
                                        United States Department of Justice

---

[7] Petitioner's belief that *Adem v. Bush*, 425 F. Supp. 2d 7 (D.D.C. 2006), means that the counsel access regime in this litigation will survive dismissal is simply wrong. That opinion dealt with the implications of the protective order for pending cases.

Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents